GEORGE WALKER, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The fact that an accused charged with breaking and entering with intent to steal, stole nothing, does not affect his guilt, if he broke and entered with intent to steal.

2. Section 5, Chapter 4405, laws of 1895, which provides that on the trial of a charge of breaking and entering, or entering without breaking, a dwelling house with intent to commit a misdemeanor or with intent to commit a felony, proof of the entering of such dwelling-house in the night time stealthily, without consent of the owner or any occupant thereof, shall be prima facie evidence of entering with intent to commit a misdemeanor in the absence of proof of intent to commit any specific crime, has no application to a case where the entry proven occurred in the day time.

3. Evidence examined and found to support the verdict for breaking and entering a dwelling-house with intent to steal property of more than the value of twenty dollars.

Writ of Error to the Criminal Court of Record for Hillsborough County.

The facts in the case are stated in the opinion of the Court.

*Solon B. Turman and G. E. Mabry,* for Plaintiff in Error.

*William B. Lamar, Attorney-General,* for the State.

CARTER, J.

The plaintiff in error was charged by information filed in the Criminal Court of Record for Hillsborough county with the offense of breaking and entering the dwelling house of one John J. Holloman with intent to steal the goods and chattels of Holloman of more than the value of $20. Trial was had in March, 1902, and a verdict rendered finding defendant guilty as charged. From the sentence imposed this writ of error is taken, and the only error assigned relates to the ruling denying defendant's motion for a new trial. This motion was based upon the ground that the verdict was contrary to the law and the evidence.

The defendant offered no testimony. From the testimony introduced by the State it appears that on March 7th, 1902, while the occupants of Holloman's dwelling house were absent, between 7 and 11:30 o'clock a. m., the house was broken into, a window on the west side raised and scratches were found on the window sill as if made by tacks in a shoe. The bureau and washstand drawers were rummaged and the bed clothes turned up and disturbed as if some one was looking for money or something. Holloman's pants were lying on the bed, his coat on a rocking chair and his vest on the floor, though they were left hanging up that morning. Nothing was missed or stolen from the house. The furniture and clothing in the house were worth about one hundred and fifty dollars, and there were between seven and eight dollars in money in the kitchen, which was not disturbed. The tracks— one a man's—the other a woman's—were found leading from the front gate to the west side of the house. Defendant who lived about one-fourth mile southeast of

Holloman's was seen by Minnie Whitten, Holloman's next door neighbor, to enter Holloman's front gate and pass around the house. This occurred at about 11 o'clock a. m. About fifteen minutes afterward defendant returned, and as he came from around the house he saw Minnie Whitten and jumped back behind the corner of the house. He then came on down the street by Minnie Whitten's house, passing it about one hundred yards and stopped. Minnie Whitten called her husband's attention to defendant and Whitten walked out on his front porch. Defendant called to him and inquired where one John Brown lived, returning in front of Whitten's house. Whitten nodded his head in the direction of John Brown's house, which was located about one-quarter mile northeast, and defendant asked if he meant that house, pointing to the Holloman house. Whitten told him no, and defendant said he had been to that house (the Holloman house) and found no one at home. Whitten then showed defendant John Brown's house, the top of which was in sight, and he went off in that direction. Whitten testified that defendant must have known where John Brown lived because he had lived in that neighborhood a number of years. A number of people passed Whitten's house daily, and a number passed on the day in question, but no one else was seen to enter the yard except defendant, though it was possible others may have done so. About half an hour after defendant left Whitten's it was discovered that Holloman's house had been broken into. Holloman's house was situated in Hillsborough county, just north of Ybor City.

Plaintiff in error contends that the evidence is not sufficient to sustain a verdict against him for breaking and entering with intent to steal property of any value, and

that the evidence will not support the finding that the intent was to steal property of more than $20 in value.

1. The evidence establishes beyond question the fact that Holloman's house was broken and entered at the time charged, and while no witness saw the defendant in the house or attempting to effect an entrance, we think the jury were justified in finding that he and no other was guilty of such breaking and entry. He was seen going into the yard and around the house shortly before the crime was discovered, he remained on the premises around the house about fifteen minutes, long enough to have committed the crime, he endeavored to hide himself behind the corner of the house when on his return he perceived that another person was aware of his presence on the premises, he endeavored to avert any suspicion that might be aroused from his presence on the premises by inquiries as to the residence of Brown, and he evidently designed to impress Whitten with the idea that he entered Holloman's premises believing it to be Brown's residence or in search of information as to Brown's residence, when, as Whitten states, he must have known that Brown resided some distance northeast of that house. These clumsy attempts to deceive and to conceal himself from observation tend to show a guilty consciousness of wrongdoing, and without further comment on the evidence we hold it sufficient to prove that defendant broke and entered the house. Commonwealth v. Shedd, 140 Mass. 451, 5 N. E. Rep. 254.

II. Many authorities hold that where a dwelling house is broken and entered in the night time, and the evidence does not disclose some other motive for such breaking and entry, the jury may infer or draw a presumption of fact that the breaking an entry was with

intent to commit larceny. State v. Worthen. 111 Iowa, 267, 82 N. W. Rep. 910; Steadman v. State, 81 Ga. 736, 8 S. E. Rep. 420; People v. Soto, 53 Cal. 415; State v. McBryde, 97 N. C. 393, 1 S. E. Rep. 925. As the breaking and entry in the present case occurred in the day time, we shall not undertake to apply the rule announced in those authorities, nor to say whether it is applicable to a breaking and entry in the day time, as we think the facts in evidence show a specific intent to steal without resorting to such presumption even if applicable to the present case. The evidence shows that the bureau and washstand drawers were rummaged, bed clothes turned up and disturbed, and Holloman's wearing apparel taken from where it was hanging and scattered over the room. The jury could from the circumstances and the breaking and entry infer that the party was in search of valuables and that his object was to steal them. Commonwealth v. Shedd, *supra;* Burrows v. State, 84 Ind. 529; Woodward v. State, 54 Ga. 106. The fact that defendant stole nothing does not affect his guilt, if his intention was to steal. State v. Beal, 37 Ohio St. 108.

It only remains to consider whether the jury were authorized to find that defendant intended to steal property of a value exceeding twenty dollars, for if the defendant intended to steal property of less value he should have been found guilty of a less offense—as in the one case he would be liable to punishment for breaking and entering with intent to commit a felony, and in the other only for breaking and entering with intent to commit a misdemeanor. We are referred to the statute which provides that "in the trial on a charge of breaking and entering, or entering without breaking a dwelling house with intent to commit a misdemeanor, or with intent to commit

a felony, proof of the entering of such dwelling house in the night time, stealthily, without consent of the owner or any occupant thereof, shall be *prima facie* evidence of entering with intent to commit a misdemeanor, in the absence of proof of intent to commit any specific crime." Section 5, Chapter 4405, laws of 1895. This statute has no application to the present case for the reason that the entry proven was not in the night time, but in the day time. The statute, therefore, does not in this case raise a presumption that defendant intended to steal property of less value than twenty dollars, nor that he intended to commit a misdemeanor. The jury were required to determine from the evidence without the aid of the presumption created by that statute the value of the property intended to be stolen. The conduct of the defendant while in the house evidenced a design to steal all the money or other valuables which he evidently thought he could find in the bureau and washstand drawers, under the bed clothes or in the wearing apparel of Holloman, and authorized the jury to find that he intended to steal property exceeding in value twenty dollars. The fact that he found none, or less than he might have supposed he would find, could not alter the original intent, nor make his act less criminal than it would have been been had he found all he supposed he would find. Harvick v. State, 49 Ark. 514, 6 S. W. Rep. 19; Clifton v. State, 26 Fla. 523, 7 South. Rep. 863.

The judgment is affirmed.