ALGIE JUNIOR JOHNSON, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

397 S.W.2d 170.

(*Jackson,* April Term, 1965.)

Opinion filed December 9, 1965.

HUGH STANTON, SR., Public Defender, and WALKER GWINN, Assistant Public Defender, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. Fox, Assistant Attorney General, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

The plaintiff in error, Algie Junior Johnson, was convicted of having unlawful carnal knowledge of a female under the age of twelve years. He was sentenced to serve twenty years in the State Penitentiary This is the second appeal in this case, the first resulting in a reversal on the ground that the confession of Johnson admitted to proof in the case was not free and voluntary.

The case has now been tried again, absent the confession, and the punishment has been fixed by the jury as aforesaid.

The plaintiff in error now assigns as error that:

(1) The evidence preponderates against the verdict, and in favor of the innocence of the accused; (2) the trial judge permitted the defendant to be tried on an additional count in the indictment charging assault and battery with intent to have unlawful carnal knowledge of the same female (under twelve years of age) and instructing the jury regarding this offense, although he had be acquitted of this count on a previous trial.

The evidence is before us in narrative form and we think that it may be fairly summarized as follows:

Charlotte Taylor, a girl eight years of age at the time of the incident in question, on March 3, 1964, was carried

to the John Gaston Hospital in Memphis, Tennessee, during the evening of that date because of considerable bleeding and upon examination by Dr. Arthur P. Fort, he found a laceration at the head of the vaginal canal near the crevix, at a position comparable to 8:00 o'clock, about one quarter of an inch long, and it appeared to him to have been caused by sexual intercourse with an adult male.

Upon being asked by the doctor what had caused the injury, the girl informed him that her father had forced her to have sexual intercourse with him. After washing the blood from the injured part of the body, the doctor could not ascertain that she had engaged in recent sexual intercourse, but he did say that she had had a number of such experiences over a period of time. The doctor testified that "the condition of her vagina indicated repeated acts of masturbation or inserting foreign objects into her vagina, that her condition was enlarged and showed sexual indulgence." He said "repeated acts of masturbation might damage the hymen, but would not be apt to tear the muscles in the vagina."

Charlotte said that the doctor was the first person that she had told about her activities with the defendant and that no one had ever done anything like this to her before the date in question except the defendant. She said also that after the event the defendant "got a rag and washed the blood off his shirt and washed out his hankerchief and my panties, and I got some water and tried to stop myself from bleeding. I was bleeding down my leg, and I couldn't stop. The handkerchief of the defendant and the little girl's panties were found by her mother hanging out to dry near each other.

238

Deputy Sheriff Sansone arrested the plaintiff in error on the evening of March 3, 1964, and stated that in his opinion Johnson was intoxicated at the time of the arrest, but when asked if he had sexual relations with Charlotte Taylor he answered in the negative. The defendant denies the charge and also denies that he was drunk when arrested.

The defendant Johnson testified that he worked for Joe Pass, Jr., on his farm. Wilma Taylor came to live with him in May, 1962 and brought her children, two girls and a boy. The parties were never married apparently. Wilma Taylor would leave home each morning at about 7:30 o'clock and the children would leave at about the same time to go to school. Wilma usually returned home at about 5:00 o'clock each afternoon, and this event was said to have occurred about 4:45 P.M.

When asked by his lawyer to explain, if he could, why Charlotte accused him of this act when he did not have anything to do with her, he said that "she did it to keep her from getting a whipping for playing with herself, and for being in the grass with little boys and that was probably the reason. That is the reason why she put the rap on me."

He said he kept beer in the house but that he was not intoxicated at the time of the alleged incident.

Wilma Taylor, the mother of the little girl, testified for the defense and said that she arrived home at about 5:00 o'clock on the afternoon in question and found that Charlotte was bleeding as indicated above, but that she did not notice any blood on the bed or on the clothes of Johnson. She said that she expressed a desire to the defendant to take Charlotte to the hospital, but he re-

plied: "No, let's wait until tomorrow and we will take her to a private doctor." She said that she had never suspected that the defendant had done anything to Charlotte and that on Sunday after Charlotte returned from the hospital she, Charlotte, told her that she had caused herself to bleed by masturbation. The above comprises all of the material evidence in this case and we are asked to reverse and remand the case on the basis that the evidence preponderates against the verdict and in favor of the innocence of the accused.

We are also asked to reverse and remand the case for a new trial on the basis that there is no evidence to corroborate the testimony of the little girl. We cannot agree with this insistence because there is ample corroboration by the doctor and other circumstances which we have detailed hereinabove. We are satisfied that the preponderance of the evidence is not against the verdict of the jury and in favor of the innocence of the accused.

██ In considering this case on appeal, we do so with the presumption that the defendant is guilty as found by the jury and approved by the court. It must be remembered that the presumption of innocence disappears after a conviction and the defendant is presumed to be guilty here. The jury and the trial judge see and hear the witnesses, face to face, and are in a far better position to determine who is correctly detailing the truth of the matter than we are, who see only the record. *Holt v. State*, 210 Tenn. 188, 197, 357 S.W.2d 57 (1962).

The first assignment of error is, therefore, overruled.

We now consider the second assignment. The indictment is in two counts, the first charging the plaintiff in error with having unlawful carnal knowledge of a female

240

under the age of twelve years, under T.C.A. sec. 39-3705, and the second charges assault and battery upon a female under the age of twelve years with intent to carnally know her, under T.C.A. sec. 39-606.

On the first trial Johnson was convicted of the crime of actually having unlawful carnal knowledge, and the jury made no mention of the offense of assault and battery with intent to have carnal knowledge. The second assignment of error is, in essence, a claim of former jeopardy. The plaintiff in error says that by the silence of the jury upon the second count of the indictment on the first trial that this worked as an acquittal of that count and that he should not thereafter have been put to trial on that count of the indictment. It is true that one may be acquitted of a count in an indictment by the silence of the jury as to a particular count. See *State v. Abernathy,* 153 Tenn. 441, 284 S.W. 361 (1926); *Harvey v. State,* 213 Tenn. 608, 376 S.W.2d 497 (1964). However, the facts in this case are entirely different from those in the cases referred to because in this case all of the elements necessary to prove the crime of assault with intent to have carnal knowledge are also necessary in proving the crime of actually having carnal knowledge. In other words, before one can be found guilty of having carnal knowledge he must also be found guilty of an intent to have carnal knowledge. The consummation of the act serves as convincing evidence that the specific intent to commit the act did in fact exist.

Therefore, since all of the elements necessary to prove the crime of unlawful carnal knowledge of a female under twelve years of age are present by virtue of the jury finding them to be present in convicting plaintiff in error of that crime, and since these elements include

every element of the crime of assault and battery with intent to have carnal knowledge, it is not possible to hold that he is not guilty of the crime of assault with intent to have carnal knowledge of a female under twelve.

■ We have held in this State that the crime of assault with intent to commit rape is included in the crime of rape. *Rushing v. State,* 196 Tenn. 515, 268 S.W.2d 563 (1954); *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224 (1962). Certainly the crimes of rape and carnal knowledge are not exactly the same, but they are similar enough to be analogized for the purposes of this case. See *Strader v. State,* supra, at 677, 362 S.W.2d 224.

The plaintiff in error here, on his own motion and his own appeal, sought and secured a reversal of the conviction in the first trial and the retrial of the facts proved his guilt here.

■■ In the case of *Davis v. State,* 199 Tenn. 51, 54, 282 S.W.2d 357 (1955), it was said:

Where a new trial was granted on motion of accused, and the verdict and conviction are set aside, he thereby waived his right and is estopped to plead the former conviction as a bar to another trial on the same or a new indictment. 199 Tenn. at 54, 282 S.W.2d at 358.

To the same effect is 22 C.J.S. Criminal Law secs. 273, 275 (1961); 1 Wharton, Criminal Law and Procedure sec. 142 (1957). Even where the first trial ended in a mistrial, former jeopardy does not attach where the defendant is tried a second time. *Usary v. State,* 172 Tenn. 305, 112 S.W.2d 7, 114 A.L.R. 1401 (1937).

However, in cases where the defendant is given a new trial he may successfully plead former jeopardy where

on the first trial he was indicted for a greater offense but was convicted for a lesser included offense he may not be tried again for the greater offense if the jury gave no finding on the first case on the greater crime by the doctrine of implied acquittal, he was acquitted of the greater offense. *King v. State,* 216 Tenn. 215, 391 S.W.2d 637 (1965).

In the King case Mr. Justice Holmes cites, among other cases, the decision of the United States Supreme Court in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), which announced the same rule for the Federal courts. The court in the Green case held that where a defendant is convicted of arson and second degree murder, and the indictment also included a charge of first degree murder, but the jury was silent on this count, on reversal and new trial defendant could not be retried for first degree murder. The court did not base its decision necessarily on the fact that the crime for which the defendant was originally convicted was a lesser crime, but in a later decision, the court indicated that the Green case is to be confined to the facts appearing therein and to be applied to cases where the second conviction is for a greater crime than the defendant was convicted of on the first trial. *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964):

Green v. United States * * * holds only that when one is convicted of a lesser offense included in that charged in the original indictment, he can be retried only for the offense of which he was convicted rather than that with which he was originally charged. 377 U.S., n. 1 at 465, 84 S.Ct., at 1589.

In the case at bar the plaintiff in error was convicted *originally* of the greater offense, so all the facts necessary to convict of the lower offense were of necessity proved by the State, and it is on these facts, and not facts that apparently were never proved, as must have been the case in *King v. State* and *Green v. United States,* that plaintiff in error is being retried. On the *second* trial of the case at bar the defendant was convicted of the greater offense only.

 It is no defense to say that because the punishments are the same, assault and battery with intent to have carnal knowledge of a female under twelve is not a lesser crime than that of actually having carnal knowledge. The true test of which is a lesser and which is a greater crime is whether the elements of the former are completely contained within the latter, so that to prove the greater the State must first prove the elements of the lesser. It should also be remembered in this case that on both trials the defendant was found guilty of actually having unlawful carnal knowledge by the jury and we assume that the jury concluded that in order to effectually have carnal knowledge that the defendant would, of necessity, have intended to do that which he did do.

We conclude that the plaintiff in error has not twice been put in jeopardy for the same offense for the foregoing reasons.

In conclusion, however, we say that this is a most unusual situation. The mother of this little girl was living in common law relationship with the plaintiff in error. She testified against her daughter and in favor of the plaintiff in error. The jury, however, concluded that the crime had been committed on the facts appearing

before it and we do not think that the case could or should be reversed on the facts.

An injustice or wrong done cannot be undone, but the offender may be punished under the rules of society. On the first trial of this case the defendant was sentenced to serve ten years in the penitentiary, and on the second trial he was sentenced to serve twenty years in the penitentiary. The former, as well as the latter, punishment is within the limits of the law, but consideration may be given by the authorities to the disparity in sentencing when and if his case is considered for parole.

Affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.