Lige **MARTIN** and Jerry Ramsey, Plaintiffs in Error,

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

May 15, 1973.

Certiorari Denied by Supreme Court July 16, 1973.

James D. Estep, Jr., Tazewell, for plaintiffs in error.

David M. Pack, Atty. Gen., Bart Durham, Asst. Atty. Gen., Nashville, H. F. Swann, Dist. Atty. Gen., Dandridge, for defendant in error.

OPINION

OLIVER, Judge.

Convicted on both counts of a joint indictment charging them with (1) carnal knowledge of a child under 12 years of age in violation of TCA § 39–3705, and (2) with committing an assault and battery upon the same female with the intent to unlawfully carnally know her in violation of TCA § 39–606, for which they were sentenced to ten years in the penitentiary, Martin and Ramsey have duly perfected an

appeal in the nature of a writ of error to this Court.

The defendants do not challenge the sufficiency of the evidence to warrant and sustain the verdict of the jury, except indirectly in urging their only Assignment of Error here that the trial court erred "in not charging the jury the law as to the lesser offense of an assault and battery upon a female under the age of 12 (twelve) years with the intent to unlawfully sexually molest or fondle her, but with no intent to carnally know her included in Section 39–606 of the Tennessee Code Annotated, and thus denied them a fair trial upon the law and the evidence."

Since this Assignment necessitates consideration of the material evidence, we summarize it briefly. Jo Ann Munsey, 10 years of age at the time, testified that on July 24, 1971 she, her sister Linda, Linda's boy friend Donny Lynch, and the defendant Martin left her parents' home and went to Paul Lynch's "fertilize house" to listen to records; that later that evening Linda and Donny left; that at that time, the defendant Ramsey and several other boys were at the same place; that at the suggestion of Martin, he and Ramsey and she left the house for the purpose of picking up Judy Jones; that, instead of stopping at Judy's house, they drove to "Jim Jones Ridge" in Hancock County and Ramsey got out of the car; that there, over her protest and resistance, Martin removed her clothes and proceeded to have intercourse with her, and then Ramsey got in the car and had intercourse with her; that Martin told her he would hang her if she told anyone about this; that they took her back to the "fertilize house" about 5:00 or 5:30 Sunday morning; and that she did not tell her mother what had happened because she was ashamed and was afraid of Martin, but told Judy Jones about it on the 26th. Judy testified Jo Ann told her about this on Sunday, July 25th. Jo Ann's mother testified that the same Sunday she noticed that Jo Ann walked funny and later found blood on her underclothing; and

that Jo Ann and her sister Linda went to Tazewell (Tennessee) with James Hopkins and Martin the same Sunday afternoon to get some fried chicken and brought back some whiskey; and that it was the following Saturday when she found out about what had happened to Jo Ann. The mother took her to a physician on August 2, 1971, who testified that upon examination he found a tear at the lower part of her vagina and a partial rupture of the hymen ring and that these lacerations appeared to be about a week old, and that she said she was attacked at a neighbor's house a week before by Lige Martin and Jerry Ramsey; that in his opinion she had been sexually assaulted and had not engaged in intercourse previously; and that she said the reason she did not disclose this occurrence to her mother sooner was because the defendants had threatened her if she told it and she was scared. Donny Lynch testified that he and Martin and Jo Ann and her sister Linda went to the "fertilize house" and Ramsey was there; that he and Linda left about 11:00 p. m. and returned about 12:00 or 12:30 and no one was there; that he and Linda looked for Jo Ann, and he took Linda home about 1:00 or 1:30 a. m. and returned to the "fertilize house"; that about 5:00 a. m. Jo Ann came to the house and he offered to take her home but she insisted on walking; and that Martin came to the "fertilize house" about 6:00 a. m.

Martin testified that on July 24 he and Donny Lynch and Jo Ann and Linda went from the Munsey home to the "fertilize house"; that later Jo Ann, Lynch and Linda left together; that he went to his car and sat there about two or three hours drinking beer; that around 2:30 a. m. Lynch returned to the "fertilize house"; and that he never saw Ramsey that night and did not have sexual relations with Jo Ann. Ramsey testified that he went to a dance in Sneedville the night of July 24th, and from there went to Pauline Moore's house about 11:15 or 11:30 and was told by her that his mother had called; that on his way home he stopped at the "fertilize

house" and saw Donny Lynch, Linda Munsey and Jo Ann and Martin there; that he stayed 10 or 15 minutes and left, and did not have sexual relations with Jo Ann. Pauline Moore testified that that Saturday night around 11:00 o'clock Ramsey brought her granddaughter home and that his mother called him and told him to come home. Edith Ramsey, the defendant Ramsey's mother, testified that about 11:15 that Saturday night she called Pauline Moore and told Mrs. Moore to tell him to come home and that he got home about 12:30 and spent the night there.

■■ The crime of assault and battery upon a female under the age of 12 years with intent to unlawfully carnally know her includes the lesser offenses of an assault or an assault and battery upon such female "with intent to unlawfully sexually molest or fondle her." Both offenses are proscribed in TCA § 39–606. Strader v. State, 210 Tenn. 669, 362 S.W.2d 224. All of the elements necessary to prove the crime of assault with intent to have carnal knowledge are also necessary in proving the crime of actually having carnal knowledge. Johnson v. State, 217 Tenn. 234, 240, 397 S.W.2d 170.

■ In this case, the victimized girl testified that the defendants forced her to have intercourse, and her testimony was corroborated by the physician who examined her. Both defendants attempted to establish an alibi, which the jury rejected. Thus, the facts in this case raised no issue as to whether the defendants assaulted the girl with the intent to sexually molest or fondle her. Clearly, then, there being no such issue in the case, the defendants were not entitled to have the jury instructed with reference to that lesser included offense.

■ If it is clear from the evidence that the lesser degree of guilt is not involved, where there is no evidence which would permit an inference of guilt of a lesser included offense upon any view that the jury might take of it, an instruction regarding lesser included offenses is not required. Patterson v. State, 218 Tenn. 80, 400 S.W. 2d 743.

■ Moreover, the law is settled in this State that if the proof clearly shows the defendant committed the higher offense of which he was convicted, it is not error if the court fails to charge a lesser included offense. Ray v. State, cited in Williams v. State, 50 Tenn. 376, at 379; Good v. State, 69 Tenn. 293.

In Good v. State, supra, the defendant was convicted of robbery. Relying on TCA § 40–2518, he contended that the court erred in not charging the offense of attempted robbery. Affirming, the Court rejected that insistence:

"This is a wise statute made for the protection of the accused in all cases in which the facts may demand its application. Its purpose is to secure the defendant the benefit of all the law applicable to the facts of his case, without any request on his part. It was not intended, however, to call from the court a charge upon hypothetical questions not suggested by proof.

"When it is clear that the grade of offense charged is proved, and there is no room for doubt as between it and a lesser grade embraced by statute in the higher, and of course included in the indictment, to charge the law pertaining to such lesser grades would simply tend to confuse and mislead the jury, and often result in verdicts inadequate to the crime actually committed . . .

"When the offense charged is beyond controversy made out and is complete, it is the duty of the court to confine its charge to such case; and so, if the offense must be the one charged or no offense in law, as frequently happens, the charge should be so restricted that the jury may be enabled to decide intelligently the single question presented and not be mystified by abstractions."

And in Ray v. State, supra, wherein the defendant was indicted for rape in the first count of the indictment, and for assault and battery with intent to commit rape in the second count, holding that the trial judge did not err in not charging the law as to the second count, the Court said:

"There is no proof in the cause to which such a charge would have been applicable, except so far as the battery is part of the accomplished fact of rape. According to the proof, the crime of rape was consummate, and the offense under the proof could have been nothing less. The charge upon the second count would therefore have been but an abstraction, which the Circuit Judge did very well to withhold."

■ However, since obviously assault and battery upon a female under the age of 12 years with the intent to have carnal knowledge of her are necessarily constituent elements of the crime of having carnal knowledge of the same female at the same time and place, as shown by the proof in this case, separate convictions may not be had both for assault with intent to have carnal knowledge and for actually having carnal knowledge. Thus, conviction of these defendants for both offenses, separately charged in different counts in the indictment, was improper. Even if two convictions and two punishments may be had under separate counts, the practice is not approved, and it must be clear that the offenses are wholly separate and distinct. Walton v. State, 1 Tenn.Cr.App. 668, 448 S.W.2d 690; McAfee v. State, 3 Tenn.Cr. App. 424, 463 S.W.2d 141.

■ Where the accused is erroneously convicted of two offenses, only one of which can stand, the rule is that the offense of the lower grade, as determined by the applicable punishment, must be vacated.

Walton v. State, supra; McAfee v. State, supra. Here both offenses of which the defendants were convicted are punishable alike, as in the case of rape. TCA §§ 39–3705, 39–606. However, since this record leaves no doubt whatever that the defendants committed the crime of unlawful carnal knowledge of a female under 12 years of age denounced by TCA § 39–3705, we vacate as erroneous the conviction of the defendants for assault and battery upon the same female at the same time and place with the intent to carnally know her.

As thus modified, the judgment of the trial court is affirmed.

GALBREATH and MITCHELL, JJ., concur.

GALBREATH, Judge (concurring).

I concur in the result reached by the majority but would respectfully point out that it was error, albeit harmless error, for the trial judge not to charge the lesser included offense of assault and battery. For a detailed discussion of my reasons see the dissent in Black v. State, 1 Tenn.Cr.App. 373, 443 S.W.2d 523, the reasoning in which was since adopted by this Court in the unpublished opinion of Kelly and Hans v. State, Knoxville, January 1972 (No. 19 Cocke County).

Not only would the facts proved in this case support a conviction for assault and battery (which is the test for determining whether or not the charge should be given), the jury actually convicted the defendants of an aggravated assault and battery.

However, in view of the overwhelming evidence of guilt on the rape charge, the error is rendered harmless beyond a reasonable doubt. See Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758.