Jerry Ray PETREE, alias,
Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

June 5, 1975.

Certiorari Denied by Supreme Court
Aug. 25, 1975.

B. Rex McGee, Knoxville, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Tom Jennings, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Knoxville, for defendant in error.

## OPINION

OLIVER, Judge.

Represented in his trial and here by eminently qualified retained counsel, Petree is before this Court upon his appeal in the nature of a writ of error contesting his conviction of third degree burglary for which he was sentenced to imprisonment in the State Penitentiary for not less than three nor more than four years (TCA § 39–904), upon an indictment charging him and Jack Patten Hatcher and Gene Galyon with breaking and entering the Knoxville business house of Kentucky Fried Chicken of Tennessee, Inc., with the felonious intent of committing larceny therein. Upon motion of each of these co-defendants, a severance was granted and Hatcher and Galyon are not before this Court.

Although Petree does not directly challenge the sufficiency of the evidence in the usual manner, he does so in effect by insisting it fails to show he committed any trespass. In order to put this defendant's insistence in proper perspective, we summarize the material evidence.

Don Galyon, brother of co-defendant Gene Galyon, was the manager of the Kentucky Fried Chicken store and worked part of the day on Monday, September 6, 1971, Labor Day. He drove up and parked out-

side the establishment about 10:00 p.m., which was closing time, as the assistant manager was locking the front door and instructed the latter to take one of the two deposits that were in the safe and hide it somewhere in the store. Accordingly, the assistant manager went back inside and took a deposit of $2200 and hid it under the front counter of the store and left the other deposit of $1700 in the safe. When he then locked the store and left, the manager was still sitting in front of the store in his car with his girl friend, one of the store's employees. The assistant manager did not tell the manager where he had hidden the deposit removed from the safe.

About midnight, in response to a call to police headquarters that some people were on the roof of the Kentucky Fried Chicken store, police converged upon the scene and surrounded the store. About the time the officers got there, the manager arrived and opened the front door for them but declined to go inside when they asked him to do so. The manager's brother was found sitting beside the safe in the office. The defendant was found in the space between the acoustic-tiled dropped ceiling and the roof. Both a metal ceiling vent and a revolving-type roof exhaust vent atop a connecting shaft had been removed, leaving a hole in the roof large enough to admit a man's body. The co-defendant Jack Hatcher was found on the roof hiding behind another roof exhaust vent or an air conditioner. Neither the money nor anything else was removed from the store.

The defendant did not testify. He relies for his defense upon the testimony of a Knoxville Police Department detective who testified as a prosecution witness, and an Assistant District Attorney General called as defense witness. His custodial statement to the police was made the same morning he was arrested, September 7, 1971, after he was fully advised and waived his constitutional rights. He made a statement to the Assistant District Attorney General in the latter's office on 6 April 1972 when he and his attorney appeared there

unsolicited. The essential substance of the combined stories the defendant told those officials was that he met the manager of the Kentucky Fried Chicken store, the manager's brother, and another man, at a tavern in Fountain City earlier in the evening and plans were made to burglarize the store that night; that the manager told them the back door of the store would be unlocked and that they could also enter it through a vent in the roof, told them there was more than $2,000 in the safe and how to get into it; that the manager left the tavern ahead of them and then the defendant and the other two men proceeded to the store and found the doors locked; that they waited awhile for the manager and when he failed to show up they entered the building through the roof vent and the police arrived almost immediately.

In his only Assignment of Error the defendant says the court erred in not instructing the jury "pertaining to conspiracy, agency of the manager, and attempting to commit a felony, to-wit: larceny."

Although in his pre-trial statements above noted, the defendant implicated the store manager, as did the assistant manager as a prosecution witness, and by order of the court the manager's name was added to the list of witnesses endorsed on the indictment upon motion of the District Attorney General, for some reason not apparent in the record he was not called as a witness. Nor does the record show that he went to the store about the time the police arrived because he had been informed or notified that the place was being burglarized. He was also arrested at the scene.

■ Nevertheless, upon this record it is immaterial whether the manager was involved in the burglary as an instigator or planner. That did not compel this defendant to commit the crime and did not absolve him for his willing participation with the intent and purpose of stealing money. The proof shows that the defendant and his co-defendants went to the establishment and entered it through the roof to carry out

that purpose. By so doing they *accomplished* the burglary—the felonious breaking and entering with the intent to steal. This defendant and his co-defendants were charged with burglary and the proof shows they *completed that felony*.

By way of explaining the charged intent to steal, the court defined larceny for the jury; read TCA § 39–603 proscribing, among other things, attempts to commit any felony punishable by imprisonment in the penitentiary when the punishment is not otherwise provided, and also fully covered the definition and essential elements of attempt to commit a crime; and instructed the jury that if they found from the proof beyond a reasonable doubt that the defendant attempted to break into the Kentucky Fried Chicken store or aided and abetted others in an attempt to do so, with the intent to steal money or goods therein, he could be convicted of that offense and that his punishment could be assessed at confinement in the penitentiary for not less than one nor more than five years; and also that the jury could assess the punishment for that offense at a fine not exceeding $500 and imprisonment in the county penal farm for any period not more than one year. (TCA § 39–603.)

■ Under that charge and under the law, the jury could have convicted the defendant of an attempt to commit third degree burglary or of attempt to commit a felony, even though the burglary—the felonious breaking and entering the building— was completed. *Hall v. State*, 503 S.W.2d 210 (Tenn.Cr.App.1973).

■ The indictment in this case, omitting the formal parts, charged the defendant and his co-defendants with feloniously and forcibly committing burglary by breaking and entering the Kentucky Fried Chicken store with the intent "then and there to commit a felony, to-wit: A larceny, that is to say, with the intent to feloniously take, steal and carry away the goods and chattels . . . then and there to be had and found in said house and so to deprive the true owner aforesaid, of the use thereof against his will and consent, . . . " Thus, it will be observed, they were not charged with larceny. The proof shows they did not commit larceny, which is defined by statute as "the felonious taking and carrying away the personal goods of another." (TCA § 39–4202.) The essential elements of larceny are trespass and feloniously taking possession of and carrying away another's goods. *Caruso v. State*, 205 Tenn. 211, 326 S.W.2d 434.

■ Burglary is breaking and entering a house or building of another "with the intent to commit a felony." TCA §§ 39– 901, 39–903, 39–904. Many cases attest that commission of various felonies other than theft may be a burglar's purpose and intent in breaking and entering a building. It would appear irrefutable, therefore, that larceny is not necessarily a part of or included in the crime of burglary. "The infallible test for determining *whether a given offense is lesser than and included in the one charged, is that the lesser included offense must be such that it is impossible to commit the greater without first having committed the lesser."* *Yearwood v. State*, 2 Tenn.Cr.App. 552, 561, 455 S.W.2d 612. (Emphasis supplied.) As the Supreme Court of this State said in *Johnson v. State*, 217 Tenn. 234, 243, 397 S.W.2d 170, 174:

> " . . . The true test of which is a lesser and which is a greater crime is whether the elements of the former are completely contained within the latter, *so that to prove the greater the State must first prove the elements of the lesser."* (Emphasis supplied.)

■ It must be perfectly clear that in order to prove a charge of burglary with intent to commit larceny, it is not necessary first to prove that the defendant committed larceny when no larceny occurred—when, as in this case, nothing was taken from the burglarized premises. Indeed, absent any charge or proof of any other motive or purpose, it has long been settled that a

presumption arises in such circumstances that the burglary was committed with the intent to steal, and that specific substantive proof of the felonious intent to steal is not indispensable to conviction of burglary charged to have been committed with that intent. Consummation of the intent to steal is not necessary to complete the crime of burglary. 13 Am.Jur.2d., Burglary § 52, p. 352; *Vickery v. State,* 62 Tex.Cr.R. 311, 137 S.W. 687 (1911); *State v. Whitaker,* Mo., 275 S.W.2d 316 (1955); *Ex Parte Seyfried,* 74 Idaho 467, 264 P.2d 685 (1953). We so held, quoting from these authorities, in *Lee v. State,* 489 S.W.2d 61 (Tenn.Cr. App.1972). And in *Duchac v. State,* 505 S.W.2d 237 (Tenn.1973), our Supreme Court adopted and applied the same principle:

"Third degree burglary is defined in T.C.A. § 39–904 as 'breaking and entering into a business house, outhouse, or any other house of another, other than dwellinghouse, with the intent to commit a felony.' In order to convict one of third degree burglary, the State must prove four distinct elements: (1) the breach, (2) the entry, (3) any house of another other than dwelling house, and (4) felonious intent. In the instant case, defendants entered the business house of another by breaking a pane of glass and unlocking the door from the inside. Thus, all the above elements are shown except that of felonious intent.

"The intent requirement is general in nature and there is no need to prove that the intruder succeeded in carrying out the intent for which the structure was broken into. Therefore, if one breaks into the dwelling of another with the intent to commit murder or any other felony he is guilty of burglary even if he leaves without finding his intended victim or without having committed any felony in the dwelling. *See People v. Schwab,* 136 Cal.App.2d 280, 288 P.2d 627 (1955); *Ragland v. State,* 71 Ark. 65, 70 S.W. 1039 (1902); *Walker v. State,* 44 Fla. 466, 32 So. 954 (1902). It is apparent from the circumstantial evidence in this case that the defendants possessed the requisite felonious intent at the moment they broke the window pane and gained entry. At that very moment, the offense of third degree burglary was committed. Thus, the Court of Criminal Appeals was correct in upholding defendants' conviction on this charge."

■ In *Duchac,* supra, the Court clearly declined to follow its 1922 holding in *Hughes v. State,* 147 Tenn. 241, 246 S.W. 834 (never since reiterated as a rule of substantive law and only referred to once subsequently by dictum in *Rushing v. State,* 196 Tenn. 515, 268 S.W.2d 563—a case wherein the defendant was charged with rape and convicted of assault and battery with intent to commit rape) that larceny and attempt to commit larceny were lesser included offenses under an indictment for third degree burglary which charged the defendant, as in this case, with breaking into a business house with the intent to steal personal property therein contained, but did not charge a theft. An established rule is that a later opinion prevails over an earlier conflicting one. *McCleary v. Morgan,* 60 Tenn.App. 578, 449 S.W.2d 440; 20 Am.Jur.2d., Courts § 232.

■ So, upon principle and authority, we conclude and hold that the law of this State now is that larceny and attempt to commit larceny are not essential elements of burglary and, hence, are not lesser included offenses of that crime.

■ Of course, as is sometimes done, a count of burglary in an indictment may also include a charge of stealing specified articles from the burglarized premises. In such a case the defendant may be convicted of larceny of the goods or property if the proof shows beyond a reasonable doubt and to the satisfaction of the jury that he did so. *Chapple v. State,* 124 Tenn. 105, 135 S.W. 321. But, in such a case the conviction of larceny is proper because of that distinct and separate crime being also specifically charged, and not upon the theory that it is a lesser included offense of burglary.

The trial judge correctly declined the defendant's request to instruct the jury concerning attempt to commit larceny.

 Nor was it error to decline the requested instructions concerning conspiracy. That request and the assignment here concerning it represent the defendant's insistence that the burglary of the Kentucky Fried Chicken store was planned and set up by the manager, Don Galyon. We have held this insistence, even if true, is immaterial. Moreover, the defendant and his co-defendants were not charged with conspiracy in this case, a separate and distinct crime proscribed by TCA § 39–1101, et seq. It would have been error for the trial judge to charge the jury concerning an offense for which the defendant was not on trial. *Church v. State*, 206 Tenn. 336, 333 S.W.2d 799.

Affirmed.

RUSSELL and GALBREATH, JJ., concur.