IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 13, 2005

**TIMOTHY HARRIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
No. P-13185     John P. Colton, Jr., Judge**

---

**No. W2004-02891-CCA-R3-PC  - Filed December 16, 2005**

---

The petitioner, Timothy Harris, appeals the denial of his petition for post-conviction relief. The single issue presented for review is whether the petitioner received the effective assistance of counsel at trial. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Dewun R. Settle, Memphis, Tennessee (at trial); and Timothy D. Harris, Tiptonville, Tennessee (on appeal), pro se.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; and Steve Crossnoe, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In 1993, the petitioner was convicted of felony murder, especially aggravated robbery, and aggravated burglary. The jury returned a sentence of death for the felony murder. The trial court imposed consecutive sentences of twenty-five years for the especially aggravated robbery and six years for the aggravated burglary. On direct appeal, this court affirmed the conviction but modified the sentence of death for felony murder to a term of life imprisonment. State v. Timothy D. Harris, No. 02C01-9211-CR-00258 (Tenn. Crim. App., at Jackson, Apr. 13, 1994). Our supreme court, however, reversed this court's modification of the death sentence and remanded the issue to the trial court for resentencing. State v. Harris, 919 S.W.2d 323 (Tenn. 1996). The petitioner ultimately received a life sentence for the felony murder.

The facts are set out in detail in the opinion of this court on direct appeal. In summary, the victim picked up his girlfriend on the evening of May 29, 1990, and drove her back to his residence. As she waited in the house, the victim carried a fan and some clothes to his car. Five men

approached the victim, one of whom removed his shirt and displayed a "long gun." The victim attempted to escape into his vehicle but was shot multiple times. The victim's girlfriend, who saw the shooting from inside the residence, hid in the bathroom of a back bedroom. She then heard approximately eight more shots from multiple guns. While hiding, she observed three of the men enter the back bedroom of the house and look through drawers. An officer described the house as having been ransacked. A few days later, the victim's girlfriend identified the petitioner from a photographic array as one of the men at the scene of the shooting.

On September 20, 1996, the petitioner filed a pro se petition for post-conviction relief alleging, among other things, that he was denied the effective assistance of counsel at trial. On October 11, 1999, the petitioner amended the petition to allege that his trial counsel was ineffective for having failed to (1) inform the petitioner of the law concerning the first degree felony murder charge, (2) properly advise the petitioner not to accept the state's plea, (3) prepare a defense, (4) request a continuance of the trial in order to prepare a defense, and (5) adequately prepare for trial. He also alleged that his counsel failed to provide effective assistance on direct appeal.

At the evidentiary hearing, the petitioner, who was represented at trial and on appeal by Attorneys Harry Scruggs and Stephen P. Spracher, testified that he was originally charged with felony murder, especially aggravated robbery, and aggravated burglary. He complained that although Attorney Scruggs prepared and filed pretrial motions, he failed to appear for hearings on those motions. He alleged that Attorney Scruggs was actually held in contempt of court for having missed a pre-trial motion hearing. The petitioner contended that his counsel did not inform him of the law involved in the case, never discussed a trial strategy, and never explained to him that he was facing the death penalty. He asserted that Attorney Scruggs advised him against accepting a plea bargain that would have resulted in a sentence of thirty-five years and that his attorneys otherwise failed to investigate the case, failed to interview the state's main witness, and failed to investigate or present mitigating factors that might have prevented the petitioner from receiving the death sentence. The petitioner also criticized his attorneys for failing to object or call witnesses during the guilt phase of the trial, contending that "[w]e didn't put on a defense." He complained that only one defense witness was called to testify during the sentencing phase of the trial, explaining that he himself did not provide the names of any witnesses who could have testified on his behalf because of his total reliance on his attorneys. The petitioner also contended that his attorneys failed to request or submit jury instructions regarding facilitation of felony murder as a lesser-included offense of felony murder.

Attorney Scruggs died before the evidentiary hearing on the petition. On the second and final day of the hearing, which was held six months after the petitioner testified, Attorney Spracher testified that in 1991, after Attorney Scruggs asked for his assistance in the case, the trial court appointed him as co-counsel. He recalled that the possibility of the death sentence was "constantly on our minds" and that the petitioner was well aware of that before their first meeting. He explained that the thirty-five year plea bargain offered to the petitioner was contingent upon each of his co-defendants accepting the plea, that some of the others chose not to accept the offer, and that, in consequence, the offer was unavailable to the petitioner. Attorney Spracher refuted the allegation

that he and his co-counsel had failed to prepare a defense and pointed out that they had filed extensive pre-trial motions in the case. He described the defense theory as factually-based: the petitioner contended that he was not part of any conspiracy that resulted in the victim's death because he had never intended for the shooting to occur and had abandoned the entire enterprise when his co-defendants began shooting at the victim.

Attorney Spracher acknowledged that because of a last-minute plea bargain reached by one of the co-defendants, he and his co-counsel were "surprised" when the case against the petitioner was elevated to first on the docket for trial. Attorney Spracher nevertheless contended that he and his co-counsel were ready because the trial court had instructed them to be prepared in case time permitted them to go forward on that date. He testified that he did not know the number of times he met with the petitioner prior to trial but insisted that he met with him enough so that he "was comfortable with going to trial at least understanding that [the petitioner] knew . . . what our plan was and where we were going with it, and that we had an idea what each person was going to say." Trial counsel stated that because the petitioner had decided not to testify and because there were no witnesses that would support the defense theory, they had to rely upon the cross-examination of the state's witnesses as the means of presenting the defense. He testified that the petitioner did not provide the names of any witnesses that could have testified on his behalf. He contended that he prepared a portion of the brief for the appeal and was successful to the extent that this court overturned the sentence of death and imposed a sentence of life imprisonment.

On cross-examination, Attorney Spracher confirmed that no investigator or mitigating specialist worked on the case because the trial court had denied the request of co-defendants for such assistance. He explained that counsel for each of the defendants charged in the murder adopted the motions made by the attorneys for the other defendants. Attorney Spracher admitted that he did not interview any of the state's witnesses but stated that Attorney Scruggs may have done so prior to his appointment as co-counsel. He acknowledged that he did not recall what jury instructions were given or whether he and his co-counsel submitted any proposed instructions.

In 2004, some eight years after the filing of the original petition, the post-conviction court entered an order denying relief. The court specifically accredited Attorney Spracher's testimony that the petitioner and his counsel had discussed the death penalty on more than one occasion, including a discussion on the morning of the trial. The post-conviction court also found that the thirty-five year plea offer was contingent upon all of the defendants charged in the murder entering pleas of guilt, something that did not occur. The court determined that when the offer was not accepted by all defendants, the state withdrew its proposal. As a result of the decision by the petitioner not to testify at his trial and there being no other witnesses who testified either at trial or the evidentiary hearing with favorable testimony, the post-conviction court concluded that the defense attorneys could not have been deficient in their performance by their inability to produce support for the petitioner's claim that he had abandoned the enterprise. The court ruled that the attorneys did everything possible to support the theory, including making the argument to the jury. The post-conviction court further concluded that because trial counsel were prepared, they could not be ineffective for failing to ask for a continuance. Although the court found that Attorney Scruggs was,

-3-

in fact, held in contempt for failing to appear for a pre-trial motion hearing, it ruled that the petitioner was not prejudiced by the action. Finally, the post-conviction court held that the petitioner was not prejudiced by counsel's failure to include authority to support the issues raised on direct appeal because this court did not treat the issues as waived and reversed the death sentence. In summary, the post-conviction court concluded that the petitioner was not denied the effective assistance of counsel.

In this appeal, the petitioner asserts that his counsel was ineffective by failing to (1) adequately prepare for trial, (2) investigate possible defenses, (3) interview potential witnesses, (4) effectively present proof at trial, (5) meet with the petitioner prior to trial, (6) request a jury instruction on the lesser included offense, and (7) request a jury instruction on the natural and probable consequences rule.

Parenthetically, the petitioner has failed to include appropriate references to the record. "Issues which are not supported by . . . appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). More importantly, however, the petitioner is not entitled to relief upon the merits of the issue.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove
> either deficiency or prejudice provides a sufficient basis to deny relief on the

-4-

ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

I.

The petitioner makes several claims of ineffective assistance of counsel that may be generally classified as a claim of failure by trial counsel to adequately prepare for trial. In this appeal, however, the petitioner makes a strong argument of deficiency in attorney performance without establishing any indication of prejudice in result. For example, as one basis for his claim of inadequate trial preparation, the petitioner asserts that his trial counsel failed to adequately investigate his case. He testified that his attorneys did not interview the state's main witness and alluded to an audiotape, apparently a tape recording of an interview of the witness, that his attorneys discovered only after the trial. The petitioner, however, failed to introduce that tape as evidence during the hearing, failed to explain how the evidence may have been used in his trial, and failed to suggest how he was prejudiced by the failure to interview the witness or introduce the tape.

The petitioner also complains that an investigator was never assigned to his case. Attorney Spracher, who testified that counsel for the co-defendants attempted to have the court appoint investigators to the case, explained that each of the attorneys representing of defendants charged in the murder adopted the motions of the others, including the request for funds to employ an investigator. The trial court denied the motion. Notwithstanding any deficiency in performance by his trial counsel's failure to insist on a hearing or offer proof of need for expert assistance in this area, the petitioner failed during the evidentiary hearing to address how he might have benefitted by an investigator, as is required for any grant of relief.

The petitioner also claims that his counsel inadequately prepared for his sentencing hearing by failing to interview witnesses or call any witness other than one of his aunts. The petitioner, however, failed to produce any witness at the evidentiary hearing who might have provided helpful testimony at trial. It is incumbent upon the petitioner to produce witnesses at the post-conviction evidentiary hearing in order to establish either deficiency in performance or prejudice in result. Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). This standard precludes speculation as to the materiality of the testimony or the credibility of the missing witnesses. Id. at 758.

The petitioner also contends that his lawyers were ineffective by failing to seek a psychological evaluation. An expert's testimony regarding a defendant's psychological condition will be admissible only if it tends to prove or disprove that the defendant did not have the capacity to form the required mental state. See State v. Hall, 958 S.W.2d 679, 689-90 (Tenn. 1997). At trial, the petitioner made no claim that he lacked the capacity to form the required mental state. Further, the petitioner made no claim of diminished capacity at his evidentiary hearing and did not offer any testimony, expert or otherwise, to that effect. He has failed, therefore, to demonstrate that he was prejudiced by his trial counsel's failure to request a psychological evaluation.

The petitioner's next complaint is that Attorney Scruggs failed to appear for pre-trial hearings and "rendered him[self] completely unavailable during critical stages of pre-trial investigation." In support of the claim, he testified that Attorney Scruggs was on one occasion held in contempt for his failure to appear at a pre-trial hearing. Attorney Spracher, however, testified that he met with the petitioner at the jail between October 1991 and March 1992. The post-conviction court accredited that testimony and concluded that Attorney Scruggs's contemptuous conduct by failing to appear at a pre-trial hearing had no adverse effect upon the petitioner or the trial of his case. Although the evidence offered at the evidentiary hearing does not preponderate against that finding, this court does not condone the conduct of trial counsel in this regard. An attorney's willful failure to appear for a pre-trial hearing in a capital case is hardly an endorsement for the effectiveness of his performance.

Finally, the petitioner also asserts that counsel was ineffective by failing to cite authority in support of the arguments on appeal. That counsel filed an appellate brief in a capital case without legal citations or significant research is apparently not in dispute. Among the other allegations of deficiency in performance, that is a troublesome fact. The state, however, established at the evidentiary hearing that despite the absence of supporting case law, this court fully addressed all of the petitioner's issues on direct appeal. Moreover, this court overturned the petitioner's sentence of death. The inescapable implication is that the petitioner was granted relief despite any omissions on the part of his attorneys. Again, the petitioner has failed to demonstrate how he was prejudiced by the shortcomings of his counsel on appeal.

II.

The petitioner also asserts that his trial counsel was ineffective for failing to object to the jury instructions, which did not include facilitation of felony murder as a lesser included offense. In

addition, he asserts that his counsel on direct appeal was ineffective by failing to present the issue as a ground for relief on direct appeal.

In order to prevail on his claim that his counsel was ineffective for failing to cite as error the trial court's failure to provide an instruction on the lesser included offense of facilitation of felony murder, the petitioner must not only establish that his counsel was deficient by failing to present the issue but he must also demonstrate that he was prejudiced by the omission. To establish that he was prejudiced, the petitioner must show that there is a reasonable probability that the result of his direct appeal would have been different had counsel presented this issue for review. In other words, he must establish that this court would likely have reversed his conviction in the original appeal and remanded for a new trial.

The initial inquiry is whether the trial court erred by failing to instruct the jury on facilitation of felony murder as a lesser included offense. Whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. Id.; see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Because the offense occurred in 1990, this court must analyze the issue under the law as it existed at that time.[1]

In 1993, the trial court was required to instruct on the lesser included offenses when "there [were] any facts that [were] susceptible of inferring guilt on any lesser included offense or offenses." State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981) (citations omitted); see also Tenn. Code Ann. § 40-18-110(a) (1990) ("It is the duty of all judges charging juries in . . . criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment . . . ."). The failure to do so was said to deny "a defendant his constitutional right of trial by a jury." Wright, 618 S.W.2d at 315. The trial court was not, however, required to instruct on the lesser included offenses when the record was devoid of evidence to support an inference of guilt of the lesser offense. State v. Stephenson, 878 S.W.2d 530, 550 (Tenn. 1994); State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990), cert. denied, 498 U.S. 1074 (1991); State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989).

In Wright v. State, 549 S.W.2d 682 (Tenn. 1977), our supreme court confirmed the test to determine whether an offense is lesser and included in the greater offense:

[1]In State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court revised the standards for the determination of lesser included offenses. This court, however, has previously declined to apply Burns retroactively to post-conviction cases where the direct appeal was concluded prior to Burns. See, e.g., James Richard Bishop v. State, No. E2000-01725-CCA-R3-PC (Tenn. Crim. App., at Knoxville, July 13, 2001), perm. app. denied, (Tenn. 1999).

"The true test of which is a lesser and which is a greater crime is whether the elements of the former are completely contained within the latter, so that to prove the greater the State must first prove the elements of the lesser."

Id. at 685-86 (quoting Johnson v. State, 397 S.W.2d 170, 174 (1965)).

At the time of the offense, facilitation of a felony was a relatively new crime, having been created by the Tennessee Criminal Sentencing Reform Act of 1989, which became effective on November 1, 1989. See State v. Greg Patterson, No. 03C01-9106-CR-180 (Tenn. Crim. App., at Knoxville, May 19, 1992). The Sentencing Commission Comments to the facilitation statute provided that the provision recognized "a lesser degree of criminal responsibility" than that of an aider and abettor:

The section states a theory of vicarious responsibility because it applies to a person who facilitates criminal conduct of another by knowingly furnishing substantial assistance to the perpetrator of a felony, but who lacks the intent to promote or assist in, or benefit from, the felony's commission.

A defendant charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party. The lesser punishment is appropriate because the offender, though facilitating the offense, lacked the intent to promote, assist or benefit from the offense.

Tenn. Code Ann. § 39-11-403 (1990 Supp.), Sentencing Commission Comments. This court held that an instruction on facilitation of a felony as a lesser included offense was not warranted in every case:

Facilitation of a felony is not a lesser included offense as a matter of law. It is, however, a lesser offense if the evidence fairly shows the conduct of an accused does not reach the level of an active participant with culpable intent in the crime, but shows he did some acts which would aid the principal offender in carrying out the crime committed.

State v. Johnny Davis Carr, No. 03C01-9111-CR-00354, slip op. at 2 (Tenn. Crim. App., at Knoxville, Apr. 21, 1992).

Here, the petitioner contends that there was proof that he did not intend for the victim to be killed and had, in fact, abandoned the robbery once the shooting began. He argues that the jury could have, therefore, found him guilty of nothing more than facilitation of felony murder. No witnesses, however, appeared on his behalf at either the trial or the evidentiary hearing. He did not testify at trial. The state produced evidence that the petitioner was the "mastermind" behind the robbery plot. There was proof that the petitioner had selected the victim and provided information as to where he

could be found. Although the petitioner himself was not armed, the evidence established that he was aware that his co-defendants were carrying guns. Thus, there was overwhelming proof that the petitioner was "an active participant with culpable intent in the crime." See Carr, slip op. at 2. Although the petitioner now claims that he did not intend to participate in the murder of the victim, again, there was no such proof presented at trial. As the post-conviction court observed, the primary defense theory was one of abandonment of criminal intent after the shooting began. The jury resolved the issue of abandonment in favor of the state. Intent to murder is not essential to felony murder. Farmer v. State, 296 S.W.2d 879, 883 (Tenn. 1956); Billy Grooms v. State, No. 03-C-01-9103-CR-00092, slip op. at 3-4 (Tenn. Crim. App., at Knoxville, Nov. 6, 1991). Any error by the omission in the instruction, therefore, in the context of the entire record, could be classified as harmless error. Under these circumstances, it is our view that the petitioner would not have been entitled to relief on this issue had it been presented on direct appeal. In consequence, the petitioner has failed to establish that he was prejudiced by trial counsel's failure to present the issue as a ground for relief on appeal.

III.

In a related issue, the petitioner contends that his trial attorneys were ineffective for failing to object to the jury charge, which did not contain an instruction on the natural and probable consequences rule. In addition, he asserts that his appellate counsel was ineffective by failing to preserve the issue for appeal.

"The natural and probable consequences rule arose as a common law component of criminal responsibility and extends criminal liability to the crime intended by a defendant, and collateral crimes committed by a co-defendant, that were the natural and probable consequences of the target crime." State v. Richmond, 90 S.W.3d 648, 654 (Tenn. 2002) (citing State v. Carson, 950 S.W.2d 951 (Tenn. 1997)). The applicable definition of criminal responsibility provides the following:

> A person is criminally responsible for an offense committed by the conduct of another if:
> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense. . . .

Tenn. Code Ann. § 39-11-402(2) (1990). In State v. Howard, 30 S.W.3d 271 (Tenn. 2000), our high court developed a test to be applied when criminal liability is based upon the natural and probable consequences rule. Our supreme court held that the state was required to prove beyond a reasonable doubt "(1) the elements of the crime or crimes that accompanied the target crime; (2) that the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402; and (3) that the other crimes that were committed were the natural and probable consequences of the target crime." Howard, 30 S.W.3d at 276. Where the state seeks to prove that the crime charged is the natural and probable consequence of the target crime, proper jury instructions should include a reference to the natural and probable consequences rule. Richmond, 90 S.W.3d at 657.

Initially, the petitioner has failed to demonstrate that he was convicted under a theory of criminal responsibility. It was the state's theory at trial that he was the "mastermind." See State v. Jason D. Pillow, No. M2002-01864-CCA-R3-CD (Tenn. Crim. App., at Nashville, February 27, 2004) (holding that an instruction on the natural and probable consequences rule is only necessary when a defendant is charged under a theory of criminal responsibility (citing Richmond, 90 S.W.3d at 654)). Moreover, the felony murder statute does not require that a homicide committed during the course of one of the enumerated felonies be forseeable. See Tenn. Code Ann. § 39-13-202(a)(2) (1990). "When one enters into a scheme with another to commit one of the felonies enumerated in the felony murder statutes, and death ensues, both defendants are responsible for the death regardless of who actually committed the murder and whether the killing was specifically contemplated by the other." State v. Hinton, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000) (citing State v. Brown, 756 S.W.2d 700, 704 (Tenn. Crim. App. 1988). Thus, the defendant here was statutorily responsible for any homicide committed during the course of the robbery and burglary, whether or not the homicide was forseeable, and a natural and probable consequences instruction was not required. See State v. Winters, 137 S.W.3d 641, 659 (Tenn. Crim. App. 2003). Under these circumstances, this court would not have reversed the conviction based upon the omission of the natural and probable consequences instruction. Thus, the petitioner has failed to establish that he was prejudiced by counsel's failure to include the issue on appeal.

Accordingly, the judgments of the post-conviction court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE