IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JULY 1997 SESSION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 02-C-01-9703-CR-00099 |
| | ) | |
| APPELLEE, | ) | Shelby County |
| | ) | |
| v. | ) | Arthur T. Bennett, Judge |
| | ) | |
| GEORGE LANGFORD, | ) | (First Degree Felony Murder, Aggravated Burglary, |
| | ) | Aggravated Assault, and Reckless Endangerment) |
| APPELLANT. | ) | |

FOR THE APPELLANT:

ON APPEAL:
W. Mark Ward
Assistant Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN 38103-1947

AT TRIAL:
Loyce D. Lambert
Assistant Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN 38103-1947

Ronald S. Johnson
Assistant Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN 38103-1947

OF COUNSEL:
A C Wharton, Jr.
Public Defender
201 Poplar Avenue, Suite 201
Memphis, TN 38103-1947

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Elizabeth T. Ryan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

John W. Campbell
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

David B. Shapiro
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

OPINION FILED: _____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, George Langford (defendant), was convicted of first degree felony murder, aggravated burglary, a Class C felony, aggravated assault, a Class C felony, and reckless endangerment, a Class E felony, by a jury of his peers. The jury sentenced the defendant to life without the possibility of parole for felony murder. The trial court found that the defendant was a standard offender and imposed the following Range I sentences: Count II, aggravated burglary, confinement for four (4)  years in the Department of Correction, Count III, aggravated assault, confinement for five (5) years in the Department of Correction, and Count IV, reckless endangerment, confinement for two (2) years in the Department of Correction. The trial court ordered the sentences in Counts II, III, and IV to run concurrently with each other and consecutively to the sentence of life without parole. The effective sentence imposed was life without the possibility of parole plus five (5) years.

The defendant presents four issues for review. He contends (a) the evidence is insufficient to support convictions for aggravated burglary and felony murder committed during the commission of aggravated burglary; (b) the trial court erred in failing to instruct the jury on the lesser included offense of criminal trespass; (c) the trial court erred in refusing defendant's request for special jury instructions on non-statutory mitigating circumstances; and (d) the trial court erred in ordering consecutive sentencing. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

In the early morning hours of April 10, 1995, the defendant went to a duplex rented by his girlfriend, Diana Wilson, to see his children and get some of his clothes. He often stayed there but had been gone for several weeks prior to April 10. The defendant became jealous when he saw Wilson had a male visitor. Also in the duplex at the time were Wilson's female cousin, who was with another man in one of the bedrooms, Wilson the defendant's two small children, and the 15-year-old victim, Tamara Gales.

Wilson refused to allow the defendant in the home. The defendant, who was accompanied by his brother and two friends, obtained a gun and fired into the living room

window. The bullet just missed striking Wilson who was sitting on the couch. The bullet pierced an inner wall and entered a neighboring apartment. After the shot was fired, Wilson grabbed her 10-month-old son and ran to hide in a bedroom closet. She was joined by the victim. Everyone else, including Wilson's other child, escaped out a back window.

The defendant tried to kick in the front door, but was unable to get the door open. The defendant and his friend then forced the door open. Once inside he ran through the house looking for Wilson and the male visitor. He entered the bedroom, tore away at least one door from the closet, and shot into the closet where the victim was hiding with Wilson and her son. The bullet struck Tamara Gales, who was fifteen years of age, in the right temple just above the right eye. The bullet passed through the brain, the neck, and lodged at the spine in the back of the neck. The fatal injury caused bruising to her throat, swelling of the neck, and an inability to breathe. The victim died as a result of the injuries caused by the projectile.

Wilson's cousin, who had escaped out the back window, overheard Wilson and the defendant standing outside the duplex talking after the shooting. She heard Wilson tell the defendant he had killed the teenager to which the defendant replied, "he didn't give a f-–." The defendant fled to Mississippi and eventually to Milwaukee, Wisconsin, where he remained for about a month.

The defendant took the stand at trial and said the shootings were accidental. He claimed he was using the gun to break the window and it went off when the gun struck the glass. Also, while he attempted to slide the closet doors back looking for the male visitor and during that action, the gun accidentally went off.

I.

The state contends the defendant's motion for new trial was not timely filed and, as a result, the defendant has waived two of the issues presented for review.[1] The record

---

[1] The state contends in its brief that the defendant made an oral motion for new trial at the conclusion of the sentencing hearing. The state cites to the minutes in the technical record which indicate that a motion was made. The state argues that when an oral motion is made the defendant must reduce the motion to writing within 30 days of the date when
(continued...)

3

reflects that the defendant was found guilty on March 1, 1996. His attorney filed a "skeletal"[2] motion for new trial on April 17, 1996. A sentencing hearing was held on June 6, 1996. On August 6, 1996, a motion for judgment of acquittal, or in the alternative, motion for new trial was filed. The hearing on the motion for new trial was heard August 18, 1996. The judgment was executed August 18, 1996.[3] Notice of Appeal was filed August 20, 1996.

A motion for new trial is required to be filed within thirty (30) days of the date the order of sentence is filed in this cause. The motion for new trial was actually heard before the judgment was executed. The motion was timely filed.

The state's issue is without merit.

## II.

The defendant contends the evidence was insufficient to prove he was guilty of aggravated burglary and of murder in the perpetration of an aggravated burglary because he was entering his own home. Furthermore, he argues there was insufficient proof that the entry was made without the effective consent of the owner.

---

[1](...continued)
the order of the sentence is entered.

The transcripts of the trial and sentencing do not indicate that an oral motion was made. It is an elementary principle of law that when there is a conflict between the transcript and the minutes of the trial court the recitation in the transcript controls. State v. Davis 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985), per. app. denied (Tenn. 1986). Furthermore, the order of sentence was executed August 18, 1996; the motion for new trial had been heard and denied.

[2] The motion only raised sufficiency of the evidence.

[3] The judgment form originally bore the date June 6, 1996. That date was marked out and "judgment executed August 18, 1996" was written above it.

4

**A.**

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

**B.**

The defendant contends he was one of the owners of the property and in lawful possession of the property at the time of entry and, thus, can neither be guilty of aggravated burglary nor felony murder resulting from the aggravated burglary. The defendant presents this Court with an issue of first impression in Tennessee.

Diana Wilson, the defendant's girlfriend and one of the victims in the case, testified that she and the defendant had lived together since 1989 in various places. She has two children by the defendant. She told jurors the defendant lived with her in the duplex, kept his clothing there, and helped with the bills[4] and with raising his children. She said it was not unusual for the defendant to come and go as he pleased; sometimes he would stay away overnight. Prior to the shooting he had been gone for two weeks. Wilson testified he was free to return home.

Wilson and the defendant both testified that Wilson's name was the only one on the lease. In order for Wilson to obtain reduced rent under Section 8 Assisted Public Housing, only Wilson and her children could apply for the duplex. Both Wilson and the defendant testified the defendant was not suppose to stay there. The utilities were also in Wilson's name.

Despite Wilson's testimony, the evidence indicated the defendant could not come and go as he pleased. Wilson refused him entry when he asked to come into the duplex to see his children and get some clothing.

The testimony showed the defendant even lived with another woman at another address approximately eight months before the shooting.

---

[4] The defendant said he had been out of work for some time because his car was not working.

**C.**

Aggravated burglary occurs when a person without the effective consent of the owner enters a private residence with the intent to commit a felony or theft or enters and does commit or attempts to commit a felony or theft. Tenn. Code Ann. §§ 39-14-402, -403. "Owner" means "a person in lawful possession of property, whether the possession is actual or constructive." Tenn. Code Ann. § 39-14-401.

Burglary is an offense against the possession, rather than the legal title or the possessor. Hindman v. State, 215 Tenn. 127, 132, 384 S.W.2d 18, 20 (1964). "The specific ownership of a building is not an essential element and title, as far as the law of burglary is concerned, follows the possession and possession constitutes sufficient ownership as against the burglar." Hobby v. State, 480 S.W.2d 554, 556 (Tenn. Crim. App.), cert. denied (Tenn. 1972). The defendant's girlfriend who was one of the victims in this case leased the duplex. Consequently she was an "owner" within the meaning of the statute. State v. Bobby Baker, Tipton County No. 02-C-01-9511-CC-00347, slip op. at 5 (Tenn. Crim. App., Jackson, January 27, 1997), per. app. denied (September 8, 1997, Tenn.).

**(1)**

Both the defendant and the state rely on authority from other jurisdictions. While courts seem to agree on the general proposition that one cannot burglarize one's own home, courts have upheld convictions of spouses who have illegally entered the former marital home or the other spouse's home. These cases usually involve situations where a separation has occurred between the parties, or where one party has established or is establishing himself or herself as the sole proprietor of the home. See Cladd v. State, 398 So.2d 442 (Fla. 1981) (Court said marriage does not preclude state from establishing burglary; property was in wife's sole possession; husband made uninvited entry.); State v. Dively, 431 N.E.2d 540 (Ind. Ct. App. 1982) (The mere fact of conjugal status does not preclude a spouse from committing an offense against the property of the other spouse.); State v. Woods, 526 So.2d 443 (La. Ct. App. 1988) (Husband's entry into his estranged

7

wife's apartment was unauthorized because he had no proprietary interest in the apartment, which was being used by his wife and children.); Parham v. State, 556 A.2d 280 (Md. Ct. Spec. App. 1989) (The marital relationship does not preclude a conviction for burglary. The court noted the victim was in the process of putting property in her name, the defendant was living with his sister, and his name was not on the title. While he had a few belongings in the house, he had items in other places as well, and he had been out of the home for six weeks.); State v. Cox, 326 S.E.2d 100 (N.C. Ct. App. 1985), review denied, 330 N.E.2d 612 (N.C. 1985) (The defendant had no proprietary interest in the house because the wife paid the rent and utilities, he had not resided there for more than one year, and she had refused him entry.); State v. Herrin, 453 N.E.2d 1104 (Ohio App. 1982) (An individual can trespass against property of which he is the legal owner when defendant, estranged from his wife, entered the home they both owned and she controlled; the defendant had been living elsewhere.); Knox v. Commonwealth, 304 S.E.2d 4 (Va. 1983) (Husband's right of consortium was subordinate to wife's exclusive possession of her apartment; husband had no proprietary interest in her apartment.); State v. Schneider, 673 P.2d 200 (Wash. Ct. App. 1983) (Even though husband and wife owned house, wife was not invited or privileged to enter the house which was occupied first by tenant and then by the tenant and husband; the wife had never lived there; she was separated from her husband and lived somewhere else.)

**(2)**

The defendant relies primarily on State v. O'Neal, 658 N.E.2d 1102 (Ohio App. 1995), app. denied, 651 N.E.2d 1309 (Ohio 1995). The defendant's reliance on this case is misplaced. In O'Neal, a trial court via pretrial motion dismissed burglary-related charges against a husband charged with killing his wife at the marital residence.[5] The trial court

---

[5]The defendant had assaulted his wife on an earlier occasion. She brought a domestic violence charge against him and applied for a protective order. She changed the locks in her house and put her husband and children out of the home. The husband called his wife at work and threatened her, then went to the marital residence, found the locks changed, kicked in the door, and shot his wife. O'Neal, 658 N.E.2d at 1103.

found that a spouse could not be a trespasser in his or her own home.[6]  The state appealed.

The issue as stated by the appellate court was "whether O'Neal could be convicted of any of the aggravated burglary charges and specifications."  The Ohio Court of Appeals said that the issue of whether the state can prove the defendant trespassed on the premises is to be determined at trial, not on a pretrial motion. O'Neal, 658 N.E.2d at 1103.  If the evidence at the close of the state's case is insufficient, then the defendant can move for an acquittal of those charges.  The court of appeals then went on to provide "further guidance" to the trial court.  The court said that in other cases where convictions had been upheld it was clear spouses had established separate residences; their actions had amounted to more than changing the locks and "putting out" spouses.  O'Neal, 658 N.E.2d at 1004. The court continued:

> [w]e hold that in the absence of a restraining order or an order granting one party exclusive possession of the marital residence, the question of whether one spouse has the sole possessory interest in the house depends on whether the evidence shows that both parties had made the decision to live in separate places. Both parties must have understood that the possessory interest of one was being relinquished, even if it was relinquished begrudgingly or reluctantly.

658 N.E.2d at 1104.  The court reversed the trial court and remanded allowing the state to go forward with its proof.  658 N.E.2d at 1105.

The issue in O'Neal was whether the dismissal of the charge was improper and whether the state should be allowed to go forward with its proof.  The court of appeals answered that in the affirmative.

**D.**

The state's proof against the defendant established that he had a history of living at places other than the duplex in question.  The defendant and Wilson were not married.  His name was not on the lease. The utilities were in her name.  In fact, he admitted he knew he was not supposed to be living there because Wilson would not qualify for subsidized rent.  He was not free to come and go as he wanted because she refused him

---

[6]The trial court said, "a spouse cannot be excluded from the marital residence in the absence of a court order."  O'Neal, 658 N.E.2d at 1103.

entrance. By its verdict, the jury found the proof was sufficient to establish Wilson was the owner of the duplex and the defendant was not the owner; when he was staying there, he was not staying there "lawfully;" and the defendant did not have effective consent to enter.

The evidence demonstrated that when the defendant entered he had the intent to commit a felony. He shot through the living room window at his girlfriend before entering the home. He continued to brandish the gun as he ran through the duplex looking for Wilson and the male companion.

A rational jury could find that he was not a joint owner or possessor and thus the evidence was sufficient to convict him of aggravated burglary and felony murder in the commission of an aggravated burglary. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The issue is without merit.

## E.

The defendant also contends the burglary statute requires a lack of consent from all joint possessors. The defendant bases this argument on the language of the statute which says "without the effective consent of the property owner." The defendant argues all joint possessors must deny entry for a burglary conviction to stand.

The defendant's argument is based upon the assumption that he was a joint possessor. In the context of this case, he was not a joint possessor.

The issue is without merit.

## F.

The defendant argues Wilson had no lawful right to exclude him from the joint residence without notice or court action. Wilson was the leaseholder of record. The defendant's name was not on the lease. She had every right to exclude him as the one lawfully in possession.

The issue is without merit.

## III.

10

The defendant next contends that the trial court committed error of prejudicial dimensions by refusing his request to instruct the jury on the offense of criminal trespass, a Class C misdemeanor. Tenn. Code Ann. § 39-14-405. This Court disagrees with this contention. While criminal trespass is a lesser included offense of aggravated burglary, State v. Boyce, 920 S.W.2d 224, 226 (Tenn. Crim. App. 1995), State v. Vance, 888 S.W.2d 776, 779 (Tenn. Crim. App. 1994), the defendant was not entitled to an instruction of this lesser included offense based upon the evidence. As this Court stated in State v. Wright, 649 S.W.2d 22, 24 (Tenn. Crim. App.), per. app. denied (Tenn. 1983): "The proof clearly makes out the offense for which the defendant was convicted, and there was no credible view of the evidence under which the defendant could have been found guilty of a lesser offense." (emphasis added). See also State v. Roy L. Sherrod, Shelby County No. 02-C-01-9510-CR-00331 (Tenn. Crim. App., Jackson, July 26, 1996), per. app. denied (Tenn. 1997).

Unlike the situations in Vance and Boyce, the evidence of the defendant's intent clearly shows the defendant committed the greater offense of aggravated burglary. As charged, the defendant would be guilty of the aggravated burglary or nothing. See State v. James Edward French, Blount County No. 03-C-01-9503-CR-00096 (Tenn. Crim. App., Knoxville, March 28, 1996), per. app. denied (Tenn. 1996). Therefore, there is no error in failing to charge the lesser offense of criminal trespass.[7] See, e.g., State v. Williams, 854 S.W.2d 904, 906 (Tenn. Crim. App. 1993); State v. Moffett, 729 S.W.2d 679, 681(Tenn. Crim. App. 1986), per. app. denied (Tenn. 1987); Martin v. State, 497 S.W.2d 583, 586 (Tenn. Crim. App.), cert. denied (Tenn. 1973).

In this case the defendant asked to enter his girlfriend's duplex. Wilson refused to admit him. He armed himself with a handgun and fired a bullet through the living room window where she was sitting on the couch. The bullet just missed her head, passed through a wall, and entered the other side of the duplex. When Wilson arose and fled the room with her son, the victim, and a male visitor, the defendant and a friend broke down

---

[7]Further, it was his position at trial that he was a homeowner and could not be guilty of the aggravated burglary of his own home. His argument would apply likewise to criminal trespass.

11

the front door and entered. The defendant followed his girlfriend through the duplex and found her hiding in a closet with their son and the 15-year-old victim. The defendant pulled the closet doors away and shot into the closet striking the 15-year-old in the head. He claimed his gun accidentally discharged both times. Given these facts, the evidence only supports the offense of aggravated burglary, not criminal trespass.

The issue is without merit.

## IV.

When the trial court and counsel discussed the sentencing charge to be given to the jury, defense counsel asked the court to instruct the jury on twelve specific non-statutory mitigating circumstances pursuant to Tenn. Code Ann. §§ 39-13-204(e) and (j)(9). They included:

> (1) George Langford is a product of a broken home.
> (2) George Langford was reared without the assistance of and influence of a mother or matriarchal figure.
> (3) George Langford's actions were influenced by emotions, passion, and love for a woman who has been with him all of his adult life.
> (4) That George Langford has expressed remorse and\or regret for the death of Tamara Gales.
> (5) That George Langford has expressed sorrow for the victim and her family.
> (6) That George Langford has a sense of personal guilt and concern about his past inability to abide by the law.
> (7) That George Langford is treatable in a prison setting.
> (8) That George Langford voluntarily acknowledged wrong doing at an early stage of the criminal process.
> (9) As jurors in this case, based upon the evidence presented in this case, you may take into account both mercy and forgiveness in reaching your decision.
> (10) That George Langford can be treated and rehabilitated.
> (11) That George Langford has the support and love of friends and family in the community.
> (12) That George Langford did not go to 2986 Elbert with the intent to kill Tamara Gales.

The trial court refused to include these in the jury instructions on mitigation. Instead, the trial court told jurors they could consider the statutory mitigating factors found at Tenn. Code Ann. § 39-13-204(j)(1)-(8) and could consider "[a]ny other mitigating factor raised by the evidence." Tenn. Code Ann. § 39-13-204(j)(9). The court also told jurors "no distinction shall be made between mitigating circumstances one through eight and those

12

otherwise raised in the evidence which are specifically requested by the state or the defense."

The defendant contends that the language of Tenn. Code Ann. § 39-13-204(e) is mandatory, not discretionary. Consequently, the trial court committed error of prejudicial dimensions by refusing to incorporate his special requests into the charge.

## A.

Until State v. Odom, 928 S.W.2d 18 (Tenn. 1996), the appellate courts of this state had consistently held that a trial court was not required to include specific non-statutory mitigating circumstances in the charge given to the jury. See State v. Nichols, 877 S.W.2d 722, 734-35 (Tenn. 1994), cert. denied, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); State v. Cazes, 875 S.W.2d 253, 267-68 (Tenn. 1994), cert. denied, 513 U.S. 1006, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); State v. Smith, 857 S.W.2d 1, 15 (Tenn. 1993), cert. denied, 510 U.S. 996, 114 S.Ct. 561, 126 L.Ed.2d 461 (1993); State v. Hartman, 703 S.W.2d 106, 118 (Tenn. 1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308-09, 92 L.Ed.2d 721 (1986). The Odom opinion was released June 3, 1996, after the trial in this case.

In Odom, the Tennessee Supreme Court discussed the language found in Tenn. Code Ann. § 39-13-204(e) of the Sentencing Reform Act of 1989 and said:

> [T]he legislature intended the trial court to instruct the jury on nonstatutory mitigating circumstance when raised by the evidence and specifically requested by either the state or the defendant.

Odom, 928 S.W.2d at 30. Since the trial court in Odom's case failed to follow the statutory mandate, the supreme court deemed this reversible error. Odom, 928 S.W.2d at 30. The court also said the instructions were not constitutionally mandated. Odom, 928 S.W.2d at 30.

## B.

This Court must next consider whether the enumerated circumstances presented

by the defendant are in fact mitigating, and, if so, were the mitigating circumstances raised by the evidence. Mitigating circumstances can pertain to any aspect of the defendant's character or record, his background or his character, circumstances of the crime that the defendant offers as a basis for a sentence less than death, and any evidence relevant to the defendant's culpability. Odom, 928 S.W.2d 30-31. Once the factors are deemed appropriate mitigating circumstances, the trial court must determine if they are supported by the evidence.

Five of the twelve instructions requested by the defendant were not supported by the evidence. Requested instruction number (6) that the defendant "has a sense of personal guilt and concern about his past inability to abide by the law" was not supported by either his testimony during the guilt phase or the sentencing phase. He maintained at trial that this fatal shooting was an accident. In the sentencing phase while testifying about a prior conviction for manslaughter for a shooting death in West Helena, Arkansas, he said that was also an accident. He has not acknowledged any guilt or recognition that he is a "wrongdoer" or that he broke the law because he claims these fatal shootings were accidents.

As for requested instructions numbers (7) and (10), that the defendant was "treatable in a prison setting" and that he could be "treated and rehabilitated," the record is completely void of any evidence to support these mitigating circumstances.

Likewise, evidence is lacking to support requested instruction number (8) that the defendant voluntarily acknowledged wrongdoing at an early stage of the criminal process. Immediately after the shooting he stated "he didn't give a f---" that a teenager had been killed. He then fled and disposed of the weapon. He went first to Mississippi, then to Covington, Tennessee, and later to Milwaukee, Wisconsin, where he stayed for about a month. He returned to Tipton County, where he was picked up by authorities. While he did initially tell authorities he was sorry for what happened, he maintained that the shooting was an accident. This is not an acknowledgment of wrongdoing.

Requested instruction number (9) is inappropriate because it deals with mercy on the part of the jury and does not address the defendant or his crime. The trial court's refusal to give instructions (6), (7), (8), (9), and (10) was not error.

14

**(3)**

The remaining requested instructions would be appropriate and were supported by the evidence, although several of them are duplicative of other instructions. Requested instructions (1) and (2) refer to the same circumstances as do instructions (4) and (5).

Instruction number (3) is duplicative of the statutory instruction (4), "the murder was committed under circumstances which the defendant reasonably believed to provide a moral justification for the defendant's conduct" and of instruction (6), that the defendant acted under extreme duress. In effect, four of the instructions from the defendant's submitted list would be appropriate: a combination of circumstances (1 and 2) and (4 and 5), and then circumstances (11) and (12).

**D.**

The remaining proffered instructions submitted by the defendant are factually specific. When jurors are given fact-specific instructions, an implication exists that the judge has made findings of fact in contravention of Article VI, § 9 of the Tennessee Constitution. State v. Hodges, 944 S.W.2d 346, 355-56 (Tenn. 1997); Odom, 928 S.W.2d at 32. Instructions must be stated in general categories, such as telling jurors they can consider the defendant's "history of childhood" instead of listing the specific details of a defendant's childhood. Hodges, 944 S.W.2d at 355. If the instructions are not submitted to the court in general categories, it is the duty of the trial judge to revise the instruction and remove the factual specificity. Hodges, 944 S.W.2d at 356. Of course, a trial court has no duty to give non-statutory instructions that are not timely requested. Hodges, 944 S.W.2d at 356.

In this case, the trial court failed to revise the remaining mitigating instructions from factually specific to general categories and give them to the jury.

**E.**

15

This Court now examines whether this error was harmless. It is emphasized that the supreme court said in Odom and Hodges the non-statutory mitigating instructions are not constitutionally mandated. The right to these instructions derives solely from the applicable statute. Thus, the question before this Court is whether the trial court's failure to adhere to the statute constitutes error which affirmatively appears to have affected the verdict. Tenn. R. Crim. P. 52(a). Would the jury have reached the same conclusion as to sentence (life without the possibility of parole) had it been specifically instructed on the defendant's requested mitigating circumstances? If, in the context of the entire record, the violation does not affect the judgment or result in prejudice to the judicial process, the violation may be classified as harmless. In this case, the violation was harmless.

### (1)

The defendant took the stand in both the guilt phase and sentencing phase. The defendant, through his own testimony and that of his witnesses, told the jury the substance of his requested instructions. For example, he said he was sorry for what happened and asked forgiveness from the victim's family. He said he was driven by jealousy because his girlfriend had a male visitor in the house. He talked about his upbringing in poverty, living with his father and his siblings, and how he wanted something better for his children. He told jurors if his life was spared, his children could visit him in prison.

His girlfriend also took the stand in both phases of the trial. She asked for leniency in the sentencing phase; she told jurors he was a good person and a good and loving father.[8] Jurors also heard from the defendant's mother, sister, and aunt who testified about the defendant's family and upbringing; all of the women asked for leniency. Jurors heard testimony regarding factors (1)-(5), (11), and (12).

### (2)

---

[8]While being impeached by the state, she acknowledged that she had told police the defendant had beaten her before and threatened her with a gun.

Although the court denied the specific non-statutory mitigating instructions, the court told defense counsel they could discuss specific mitigating circumstances during argument for the sentencing phase and ask the jury to apply any circumstances supported by the evidence. The transcript of the sentencing arguments was not included in the record presented to this Court. The trial court instructed the jury to consider "[a]ny other mitigating factor raised by the evidence."

**(3)**

In addition, since the release of the <u>Odom</u> opinion, the Tennessee General Assembly has passed a law amending a section of Tenn. Code Ann. § 39-13-204(e)(1) which reads as follows:

> After closing arguments in the sentencing hearing, the trial judge shall include in the instructions for the jury to weigh and consider any of the statutory aggravating circumstances set forth in subsection (i) which may be raised by the evidence at either the guilt or sentencing hearing, or both. The trial judge shall also include in the instructions for the jury to weigh and consider any mitigating circumstances raised by the evidence at either the guilt or sentencing hearing or both which shall include, but not limited to, those circumstances set forth in subsection (j). These instructions and the manner of arriving at a sentence shall be given in the oral charge and in writing to the jury for its deliberations. *However, a reviewing court shall not set aside a sentence of death or of imprisonment for life without the possibility of parole on the ground that the trial court did not specifically instruct the jury as to a requested mitigating factor that is not enumerated in subsection (j).*

Tenn. Code Ann. § 39-13-204(e) (italicized portion added by amendment). The legislature also deleted a sentence which read: "No distinction shall be made between mitigating circumstances as set forth in subsection (j) and those otherwise raised by the evidence which are specifically requested by either the state or the defense to be instructed to the jury." This law took effect in April of 1997.

**(4)**

The jury heard the testimony in support of mitigation. Jurors were told this information could be used in reaching a sentencing verdict. The jury declined to impose

17

the death penalty and opted to sentence the defendant to life without the possibility of parole. The error was harmless.  See also State v. Leroy Hall, Hamilton County No. 03-C-01-9303-CR-00065 (Tenn. Crim. App., Knoxville, December 30, 1996) (The trial court did not err in refusing a defendant's specific non-statutory mitigating circumstances because "the record does not disclose any measure of prejudice to the defendant from deviating from the Odom procedures.").

The issue is without merit.

**(5)**

The trial court also instructed the jury to consider statutory mitigating factors (j)(1) through (8).  While neither party has raised this as an issue, this Court notes three of those factors were not raised by the evidence (i.e., (3), (5), and (7)).[9]  It is error for the trial court to charge any statutory mitigating circumstance not raised by the evidence. State v. Hartman, 703 S.W.2d 106, 188 (Tenn. 1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308-09, 92 L.Ed.2d 721 (1986); State v. Leon Barnett Collier, Hamilton County No. 03-C-01-9602-CR-00072 (Tenn. Crim. App., Knoxville, January 13, 1997), application to app. pending.  This error benefited the defendant and does not merit reversal absent a showing of prejudice.  State v. Smith, 857 S.W.2d 1, 15 (Tenn. 1993), cert, denied, 510 U.S. 996, 114 S.Ct. 561, 126 L.Ed.2d 461 (1993).

This issue is without merit.

**V.**

---

[9]      (3) The victim was a participant in the defendant's conduct or consented to the act;

* * * *

(5) The defendant was an accomplice in the murder committed by another person and the defendant's participation was relatively minor;

* * * *

(7) The youth or advanced age of the defendant at the time of the crime;

Tenn. Code Ann.  § 39-13-204(j).

18

The defendant next contends the trial court erred by ordering the defendant's sentences for burglary, assault, and reckless endangerment, which are to be served concurrently, to run consecutively to the sentence of life without the possibility of parole. He argues he is not a "dangerous offender" and further argues the court failed to follow State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995).

**A.**

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1994). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of

establishing that the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

**B.**

The trial court sentenced the defendant to four (4) years for aggravated burglary, five (5) years for aggravated assault, and two (2) years for reckless endangerment to run concurrently for an effective sentence of five (5) years. This sentence was ordered to run consecutively to the sentence of life without the possibility of parole for an effective sentence of life plus five (5) years.

The defendant contends first, he is not a "dangerous offender" and second, the trial court failed to correctly apply State v. Wilkerson in determining whether to sentence the defendant to consecutive sentences. This Court does not have to address those issues because consecutive sentencing is warranted on other grounds.

Here, the defendant was on probation when he committed the offenses in question. Tenn. Code Ann. § 40-35-115(b)(6). The defendant was convicted of manslaughter on September 16, 1991, in the Circuit Court of Phillips County, Arkansas. He was placed on five years probation. The offenses in question occurred April 10, 1995.

This Court does note that given the defendant's prior convictions for manslaughter and a weapons offense, and the facts of this case, the citizens of Tennessee need to be protected from the defendant's future criminal conduct. The defendant had several criminal offenses as a juvenile, including two sales of cocaine and auto theft. He was 23 years old when he committed the offenses in this case. In addition, the defendant admitted to using alcohol and the illegal use of marijuana regularly from the age of 15 until his arrest.

The nature of the crimes in this case clearly establishes the defendant has little or no regard for human life. While the trial court did not specifically find the defendant was a "dangerous offender," the record certainly supports it. Furthermore, the extended sentence is necessary to protect the public against the defendant's further criminal conduct, and the sentences reasonably relate to the severity of the offenses committed. State v. Wilkerson,

20

905 S.W.2d 933, 938-39 (Tenn. 1995).

The issue is without merit.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____
DAVID H. WELLES, JUDGE

_____
JOE G. RILEY, JUDGE